Filed 1/27/23 P. v. Scott CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096094 |
| Plaintiff and Respondent, | (Super. Ct. No. 80035) |
| v. | |
| LAWRENCE SCOTT, JR., | |
| Defendant and Appellant. | |

In 1990, a jury found defendant Lawrence Scott, Jr., and his codefendant Shyrl LaMar guilty of robbery, burglary, and the first degree murder of two victims, and found true three special circumstance allegations. As to defendant individually, the jury also found true allegations he personally used a dangerous and deadly weapon, a knife, in the commission of each crime. The trial court sentenced defendant to life in prison without the possibility of parole. In 2022, defendant filed a petition for resentencing under

1

former Penal Code section 1170.95 (now section 1172.6).[1]  Before the prosecution filed a response or defendant filed a reply, and without conducting a prima facie hearing, the trial court denied the petition, concluding the record established defendant was the actual killer, and therefore ineligible for resentencing as a matter of law.

Defendant asserts the trial court erred in denying his petition for resentencing. Among other things, he asserts the trial court failed to satisfy statutory requirements for full briefing and holding a prima facie hearing, that the court improperly engaged in factfinding and weighing of evidence, and that at least one juror may have found him guilty on a no longer valid theory of murder.

We affirm. The record establishes defendant's jury found, beyond a reasonable doubt, that he acted with the intent to kill. As such, he is ineligible for resentencing under section 1172.6 as a matter of law.

## BACKGROUND

In 1986, the two victims were robbed of $60 and stabbed to death as they lay in bed in their apartment. (*People v. Scott* (Feb. 16, 1994, C010153, C010317) [nonpub. opn.] (*Scott*).)  According to LaMar's 17-year-old daughter, who was the prosecution's primary witness, on the night of the killings, defendant and LaMar "discussed waiting for the victims to go to sleep so they could take their money." (*Ibid.*)  Later, LaMar's daughter refused to go to the victims' apartment with defendants "because she 'thought the people were going to die.' " (*Ibid.*)  As the jury heard, LaMar's daughter had testified at the preliminary hearing that defendant "was the one who was going to kill the victims. [He] said he was going to get what he was going to use and she heard him going through the drawers in the kitchen." (*Ibid.*)

---

[1]  Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). Undesignated statutory references are to the Penal Code.

Another witness "saw [defendant] going into the victims' apartment a little after midnight with liquor and food." (*Scott, supra*, C010153, C010317.) LaMar's daughter "awoke when the defendants returned about 2:30 a.m . . . . LaMar said, 'He did it. He did it. They're gone.' She was carrying a clear plastic bag with . . . a bloody butcher knife wrapped in toilet paper, and another plastic bag with jewelry. . . . [Defendant] did not deny or respond to any of these statements." (*Ibid*.)

Both victims died of blood loss caused by multiple stab wounds. (*Scott, supra*, C010153, C010317.) Stains on defendant's clothing "revealed that the person wearing his clothing was standing in close proximity to the victims while they were being stabbed." (*Ibid*.)

At trial, defendant testified that LaMar's daughter's boyfriend was the killer. (*Scott, supra*, C010153, C010317.) The defense also "launched an unmitigated assault on the credibility of" LaMar's daughter. (*Ibid*.)

A jury found defendant and LaMar each guilty of robbery (§ 211), burglary (§ 459), and two counts of first degree murder (§ 187, subd. (a)). (*Scott, supra*, C010153, C010317.) The jury found true the special circumstance allegations that the murders were committed while defendants were engaged in the commission of robbery (§ 190.2, former subd. (a)(17)(i)) and while they were engaged in the commission of burglary (§ 190.2, former subd. (a)(17)(vii)), and that they committed multiple murders (§ 190.2, subd. (a)(3)). (*Scott, supra*, C010153, C010317.) The jury also found true allegations that defendant personally used a dangerous and deadly weapon, a knife, in the commission of each crime. (*Ibid*.) The trial court sentenced defendant to two terms of life in prison without the possibility of parole on the murder counts. (*Ibid*.) This court affirmed defendant's and LaMar's convictions. (*Ibid*.)

On March 30, 2022, defendant filed a form petition for resentencing. After appointing counsel but before the prosecution filed a response or defendant filed a reply, and without holding a prima facie hearing, the trial court denied the petition. The court

3

determined that, by its verdicts, the jury determined defendant committed both murders while engaged in robbery and burglary, and "that he is the actual killer because he personally used a knife."

## DISCUSSION

*Senate Bill No. 1437 and Petitions for Resentencing Generally*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 achieved this by amending sections 188 and 189.

Following enactment of Senate Bill 1437, subdivision (a)(3) of section 188 provides: "Except as stated in subdivision (e) of Section 189 [addressing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Thus, following enactment of Senate Bill 1437, and where felony murder is not at issue (see § 189, subd. (e)), a person must act with malice aforethought to be convicted of murder (§ 188, subd. (a)(3); see *People v. Vang* (2022) 82 Cal.App.5th 64, 83; *In re R.G.* (2019) 35 Cal.App.5th 141, 144).

Relevant to felony murder, section 189, subdivision (e) now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery and burglary] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the

4

underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also created a mechanism for individuals convicted of felony murder or murder based on the natural and probable consequences doctrine to petition for resentencing. Insofar as relevant here, section 1172.6 provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [¶] (2) The petitioner was convicted of murder . . . following a trial . . . . [¶] (3) The petitioner could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022, amended what is now section 1172.6. Insofar as relevant here, Senate Bill 775 codified the holdings of *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) "regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case," reaffirmed "that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt," and addressed "what evidence a court may consider at a resentencing hearing." (Stats. 2021, ch. 551, § 1, subds. (b)-(d).)

*Adherence to Statutory Procedures*

Defendant asserts, and the Attorney General agrees, the trial court failed to follow the procedures required by section 1172.6, subdivision (c) by not allowing for full briefing and failing to hold a prima facie hearing. We agree.

Section 1172.6, subdivision (c) provides, in part: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. . . . After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." The trial court failed to satisfy these requirements by denying defendant's petition without first allowing the parties to complete briefing and, thereafter, holding a prima facie hearing.

Nevertheless, we may affirm the denial of the petition if defendant was not prejudiced by these errors. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.) Because we determine, *post*, defendant was ineligible for relief as a matter of law, it is not reasonably probable he would have obtained a more favorable result absent the errors in failing to follow statutory procedures. (See *People v. Watson* (1956) 46 Cal.2d 818, 836; see also *Lewis*, at pp. 973-975 [typically *Watson* harmless error test applies to state law statutory error; determining *Watson* standard applies to error in failing to appoint counsel at prima facie stage before summarily denying petition].)

*Eligibility for Section 1172.6 Relief*

Defendant asserts the trial court engaged in impermissible factfinding and weighing of evidence at the prima facie stage. He asserts his murder convictions could have been based on one or more jurors finding him guilty on a no longer valid felony-murder theory or a theory of aiding and abetting under the now abrogated natural and probable consequences doctrine.

6

At the prima facie stage, "a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 974.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Id.* at p. 971.) " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*) To determine whether the petitioner has made the requisite prima facie showing, the trial court may examine the petitioner's record of conviction. (*Id.* at pp. 970-971.) If the court determines in its preliminary assessment that the petitioner would be entitled to relief if the petition's factual allegations were proved, the court must issue an order to show cause. (*Id.* at p. 971.) However, if the record of conviction establishes the petition lacks merit as a matter of law, the trial court may deny the petition without conducting further proceedings. (See *ibid.* [the "record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

Here, the jury instructions informed the jury that, to find defendant guilty of murder, the jury had to find, among other things, the killings were committed with malice aforethought or occurred during the commission or attempted commission of robbery and/or burglary. Crucially, for the special circumstance allegations, the trial court instructed the jury with CALJIC No. 8.80, in part: "The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. [¶] []*If you find beyond a*

7

*reasonable doubt that the defendant was either the actual killer or an aider or abetter, then you must also find beyond a reasonable doubt that the defendant intended either to kill a human being or to aid another in the killing of a human being in order to find the special circumstance to be true.* [¶] . . . [¶] You must decide separately each special circumstance alleged in this case as to each of the defendants. . . . [¶] In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously." (Italics added.) Thus, based on this instruction, to arrive at their true findings on the special circumstance allegations, the jury necessarily found, unanimously and beyond a reasonable doubt, that, as the actual killer or as aider and abettor, "defendant intended either to kill a human being or to aid another in the killing of a human being"

Defendant asserts this instruction was ambiguous, emphasizing the discussion of the italicized language in *People v. Robinson* (1990) 221 Cal.App.3d 1586. In *Robinson*, the court noted the defendant's contention that the second alternative in this portion of the instruction—that the defendant intended "to aid another in the killing of a human being"—allowed for a true finding without a finding that the defendant intended to kill. (*Id*. at p. 1590.) Ultimately, the court found it unnecessary to decide whether the intent to kill "is necessarily found in the words 'aid another in the killing of a human being.' " (*Id*. at p. 1591.)

We note, first, that it is important to retain the word "intended" in this formulation; the language of the instruction requires, in the alternative to a finding that the defendant intended to kill a human being, that the defendant "intended . . . to aid another in the killing of a human being" Second, *Robinson* does not stand for the proposition that this part of the instruction does *not* include the requirement that the defendant harbored the intent to kill; the *Robinson* court found it unnecessary to decide the issue. (See *People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["cases are not authority for propositions not

8

considered"].) Lastly, we fail to see how a defendant could have intended to aid another in the killing of a human being without harboring the intent that a killing would result.

Furthermore, prior to the time of the killings here, in *Carlos v. Superior Court* (1983) 35 Cal.3d 131, overruled in *People v. Anderson* (1987) 43 Cal.3d 1104, the Supreme Court " 'held that intent to kill was an element of the felony-murder special circumstance whether or not the defendant was the actual killer.' " (*People v. Dickey* (2005) 35 Cal.4th 884, 901.)[2] Consistent with *Carlos*, CALJIC No. 8.80 at the relevant time required that, to find the felony-murder special circumstance to be true, the defendant must have either intended to kill a human being or intended to aid another in the killing of a human being. "As to offenses committed after *Carlos* but before *Anderson*," such as those at issue here, "due process and ex post facto principles demand that the intent-to-kill requirement apply to any felony-murder special circumstance charged in connection with such offenses." (*People v. Johnson* (1993) 6 Cal.4th 1, 44, disapproved on another ground in *People v. Rogers* (2006) 39 Cal.4th 826, 879.)

Thus, the law in effect at the time of the offenses, the jury instructions, and the special circumstance true findings establish that the jury concluded, unanimously and beyond a reasonable doubt, that defendant acted with the intent to kill.[3] Malice was not imputed to him based solely on his participation in the underlying crimes.

----

[2] In *People v. Anderson, supra*, 43 Cal.3d at pages 1138-1139, the Supreme Court concluded that "the broad holding of *Carlos* that intent to kill is an element of the felony-murder special circumstance cannot stand."

[3] For context, in our 1994 unpublished opinion, this court rejected LaMar's contention that the jury could have found, based on the same instructional language, that she did an intentional act to help defendant kill the victims without finding she possessed the intent to kill. (*Scott, supra*, C010153, C010317.) This court acknowledged *Robinson* but concluded: "[W]e believe the instructions, when considered in their entirety, properly informed the jurors an intent to kill was a necessary element of the two felony murder special circumstances." (*Ibid.*)

Defendant asserts that, under *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*), the special circumstance true findings do not foreclose the possibility of him making a prima facie showing on his petition. He emphasizes the holding from *Strong*: "We now conclude . . . [felony-murder special-circumstance] [f]indings issued by a jury before *Banks* and *Clark* do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437." (*Id.* at p. 710.) *Strong* does not apply here.

In 1990, "the voters approved Proposition 115, which made substantive changes in felony-murder special-circumstances provisions, including amending subdivision (b) and adding subdivisions (c) and (d) to section 190.2." (*People v. Cleveland* (2004) 32 Cal.4th 704, 751.) "Before these amendments, for a felony-murder special circumstance to apply, the defendant had to either be the actual killer or intend to kill." (*Id.* at p. 752.) Following approval of Proposition 115, however, "a person other than the actual killer is subject to the death penalty or life without parole if that person was a major participant in the underlying felony . . . and either intended to kill or acted with reckless indifference to human life." (*Ibid.*, italics omitted.) Thus, after approval of Proposition 115, a "defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' " (*Strong*, *supra*, 13 Cal.5th at p. 704.) Later, in *People v. Banks* (2015) 61 Cal.4th 788, the Supreme Court clarified the meaning of "major participant," and, in *People v. Clark* (2016) 63 Cal.4th 522, the meaning of "reckless indifference." (*Strong*, at pp. 705-707.)

Here, however, defendant's offenses occurred before approval of Proposition 115. At that time, a jury could not have found true a felony-murder special circumstance based on a determination that a defendant was a major participant in the underlying felony who acted with reckless indifference to human life. At the time of defendant's offenses, " 'intent to kill was an element of the felony-murder special circumstance whether or not the defendant was the actual killer.' " (*People v. Dickey, supra*, 35 Cal.4th at p. 901;

10

accord, *People v. Cleveland, supra*, 32 Cal.4th at p. 752 [before Prop. 115, "for a felony-murder special circumstance to apply, the defendant had to either be the actual killer or intend to kill"].)

*Strong* addressed post-Proposition 115 offenses involving felony-murder special circumstances premised on the theory that the defendant was a "major participant" who acted "with reckless indifference to human life." (*Strong, supra*, 13 Cal.5th at p. 703.) *Strong*'s holdings were that "unless a defendant was tried after *Banks* was decided, a major participant finding will not defeat an otherwise valid prima facie case," and "unless a defendant was tried after *Clark* was decided, a reckless indifference to human life finding will not defeat an otherwise valid prima facie case." (*Id*. at p. 721.) *Strong* is relevant to offenses occurring *after* the approval of Proposition 115 and its creation of the "major participant" who acted with "reckless indifference to human life" theory, and *before* the subsequent guidance provided by *Banks* and *Clark*. (*Strong,* at pp. 703-707.) *Strong* has no applicability to this case.

Senate Bill 1437 relief is unavailable if the defendant acted with the intent to kill. (*Strong, supra*, 13 Cal.5th at p. 710; see §§ 189, subd. (e)(3), 1172.6, subd. (a).) Here, as stated, the record establishes, as a matter of law, defendant acted with the intent to kill. Because defendant could still be convicted of murder following Senate Bill 1437's changes to the felony-murder rule, he is ineligible for relief as a matter of law. (§§ 189, subd. (e), 1172.6, subd. (a)(3).)

In light of our determination, we need not consider whether the personal use of a dangerous or deadly weapon enhancement also rendered defendant ineligible for relief, or whether the record established that defendant was the actual killer, as a matter of law. Nor must we address whether, in making these determinations, the trial court improperly engaged in factfinding or the weighing of evidence. "[W]e will affirm a judgment correct on any legal basis, even if that basis was not invoked by the trial court. [Citation.] There

11

can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 269.)

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

/s/
_____
BOULWARE EURIE, J.

We concur:

/s/
_____
MAURO, Acting P. J.

/s/
_____
KRAUSE, J.